PRICE, Appellee, v CLEVELAND TRUST CO., Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20404.   Decided December 4, 1947.

Harrison, Thomas, Spangenberg & Hull, Cleveland, for appellee.
Miller, Daus and Schwenger, Cleveland, for appellant.

**OPINION**

By DOYLE, J.

Newman S. Price recovered a judgment in the sum of $9,000 against The Cleveland Trust Co. as executor of the estate of James S. Jordan, deceased. The recovery was for legal fees, all allegedly rendered to the trust company's decedent, Jordan, by the plaintiff's assignors, John H. Price, Sr., and John H. Price, Jr. The action was based upon an implied contract to pay the reasonable value of the services rendered.

The appeal to this court is on questions of law from the heretofore-noted judgment, entered in the Court of Common Pleas of Cuyahoga County.

1. Attention will be first directed to the third assignment of error, which is presented in the following terms: "In re testimony of John H. Price, Sr., under dead man statute (§11495 GC), and presentment of claim against decedent's estate (§10509-112)."

It appears that the plaintiff, Newman S. Price, presented a claim to the executor of the estate of Jordan for the amount of $27,661, plus interest, which he claimed to own by assignment from John H. Price, Sr., and John H. Price, Jr., his father and brother, respectively. The claim was seemingly filed within the time limitation provided in §10509-112 GC.

Upon the trial of the case it was necessary for the plaintiff-assignee to prove the assignment, and this he attempted to do by offering in evidence a written assignment purportedly executed and dated October 27, 1940, a day several months subsequent to the day of the presentment of his claim to the representative of the estate. The court properly rejected this evidence.

The plaintiff then attempted to prove and oral assignment of the claim on a date prior to the death of the defendant's decedent. The court properly rejected this evidence.

Thereupon the following appears of record, which is the only evidence of the assignment of the claim of John H. Price, Sr., to the son Newman S. Price, the plaintiff herein; the testimony being by the said John H. Price, Sr.:

"Q. (by Mr. Harrison): I will put the question further. At the time and immediately after Mr. Jordan's death was there in force and effect as of that time an assignment of this interest from you to your son Newman?

"Objection; overruled; exception.

"A. There was."

The appellant vigorously asserts that this question and answer was erroneously permitted to stand, and without it there is no evidence of the assignment of the claim. Specifically, appellant says:

"This is error manifest. Price testified directly to an alleged assignment made in 1937 while Jordan was alive and the answer was striken. Then the witness was permitted to testify to exactly the same thing under a different form of question.

"The existence of the alleged assignment at and after Jordan's death depends upon the fact of the assignment prior to Jordan's death. It is universally recognized that the statute cannot be evaded by inquiries obstensibly directed to facts after death but really directed to facts prior to death."

Sec. 11495 GC, expressly makes a **party** incompetent to testify in an action where the adverse party is the legal representative of a deceased person, except under certain circumstances therein set forth. The disqualification does not apply to a party who testifies to "facts which **occurred** * * * after the time the decedent * * * died." (Emphazing ours.) Another Ohio statute (§11494 GC) in this connection also provides that "4. A person who assigns his claim or interest, concerning any matter in respect to which he would not, if a party, be permitted to testify," shall not testify.

In the light of these statutes, was this testimony of John H. Price, Sr., supra, competent evidence of the fact that the son Newman was the assignee of the claim against the Jordan estate, and as such could prosecute it as his own?

It is to be observed that the Ohio statutes (different in many respects from those in other states) disqualify the assignor or the assignee of the claim from testifying as a witness to any fact which occurred prior to the death of Jordan. This disqualification exists even though the subject-matter is one which was without the knowledge of the deceased, and consequently upon which he could not have spoken if living.

The testimony of the assignment which was permitted to stand was, of course, evidence of a fact which **existed** after the death of the deceased, but it was not evidence of a fact which **occurred** after the decedent died. To be sure, the testimony tended to prove a fact existing at the time of and after the death of the deceased, but this testimony of necessity relates to the fact of an assignment which occurred prior to the death of the deceased, and it was therefore incompetent. A rule under the Ohio statutes may be succinctly stated as follows: That where proof of the existence of a fact after the death of a decedent relates to the existence of such fact prior to decedent's death, which continued to exist after death, the evidence of such fact after death is incompetent because it did not "occur" after the death.

We therefore are of the opinion that there is no competent evidence of the ownership of the claim of John H. Price, Sr., in the son Newman, the plaintiff herein. See 70 C. J., Witnesses, Sec. 393, and supporting cases cited thereunder; see also, Hall, Admx., v Crain, 2 O. Dec. (Rep.) 453, for analogous reasoning under similar statutes.

2. It is charged that the court erred in permitting John H. Price, Sr., to testify to the value of legal services which he rendered to Jordan prior to Jordan's death.

John H. Price, Sr. (alleged assignor of claim to plaintiff), was presented as an expert witness by the plaintiff, and was so accepted by the court. The following question was asked him, on the theory that it was of a hypothetical character:

"Mr. Price, I am going to put to you a hypothetical question which you will understand as a lawyer. I am going to ask you, and I want you to disregard everything that you know from your own personal knowledge about this whole matter. I want you to rely on the question I am about to put to you, and in the answer that I expect to receive from you I want you to rely merely on the evidence which you have received here in court. Now, then, assuming that as a lawyer at this bar, with the years of experience that are entailed and the knowledge that would be necessarily entailed in the practice of law since the Spanish-American War, if we may use that term, and that you did work as a lawyer for Jordan as stated in Jordan's own admissions (this reference is to the record of a former trial held during the lifetime of Jordan and which was admitted in evidence in the insant trial) testified to or read to this jury yesterday in this case—and I take it, your honor, counsel won't require me to read that all

over again to embody it in this hypothetical question, that we can at least shorten it to that extent, without having to read it all over.

"Mr. Schwenger: That's all right.

"Predicating your answer upon what you have heard in this court (a) from what Mr. Jordan's testimony was, (b) from what Miss Michels's testimony was in this court, (c) from what the other two girls have testified to, and (d) from the files as admitted in this case, do you have an opinion— and you can answer this question yes or no—as to what would be the reasonable charge, and you will bear in mind I am not asking the services you did perform, but only do you have an opinion as to a reasonable charge for the services shown by the evidence in this case to have been performed by a man by the name of John Price for a man by the name of Jordan?"

Objection was made to this question for the reason that the witness came within the prohibition of §11495 GC. Counsel for plaintiff then continued the question as follows:

"Mr. Price, without repeating that question again, I should have also included, and including also the evidence as shown by the files which are here in evidence and have been received in this case. Based upon that alone, and disregarding everything out of your mind that you might know by your own personal experience, do you have an opinon— you can answer this yes or no—as to what would be the fair and reasonable charge for the services shown thus to have been performed?

"A. I do.

"Q. And what is your opinion?

"Mr. Schwenger: We object.

"The Court: Overruled.

"A. $17,400."

In so far as John H. Price, Sr., is concerned, his right to testify is governed by the same rules as would be applicable to his son Newman, the plaintiff, his claimed assignee, by virtue of the provisions of §11494 (4) GC, supra. The statute (§11495 GC) bars the son Newman from testifying **entirely** except under the circumstances set forth in the various subdivisions therein, one of which only is pertinent to this discussion, viz.: "The facts which occurred * * * after the time the decedent * * * died," may be given in evidence by the adverse party.

The statute has nothing to do with the question of the competency or admissibility of the testimony of the assignee as such, but relates solely to his competency as a **witness.** **42 O. Jur., Witnesses, p. 163 Sec. 157.** In other words, the statute says the witness cannot testify at all except it be concerning facts which occurred after the time the decedent died. Certainly the fair and reasonable value of legal services performed for the deceased prior to death is not testimony of a fact which occurred after the decedent died.

Counsel for appellee comment by brief: "The only point now made is that, out of all the lawyers in the world, Price was the one person incompetent to give a present opinion about present evidence." Be that as it may, the legislature made the rule, and as long as the witness must stand in the shoes of the party to the record, this court must rule him incompetent, because he cannot testify on **any subject** unless it comes within the statutory exceptions.

3. It is further claimed that "the court erred in admitting evidence of services barred by the statute of limitations," and that "the court erred in charging the jury on the subject of limitations."

In this connection, this court is of the opinion that the determination by the jury that the six-year statute of limitations did not apply, is manifestly against the weight of the evidence. (It is apparent that it did so find, in view of the evidence in its relation to the size of the verdict.)

4. We have examined the other errors claimed, and find none to be of a prejudicial character.

The judgment is reversed, and the cause remanded.

NICHOLS, P. J., and STEVENS, J., concur.